1  Steven Jay Katzman, State Bar No. 132755
   skatzman@bklwlaw.com
2  Anthony R. Bisconti, State Bar No. 269230
   tbisconti@bklwlaw.com
3  **BIENERT KATZMAN LITTRELL WILLIAMS LLP**
   601 W. 5th Street, Suite 720
4  Los Angeles, California 90071
   Telephone (213) 528-3400
5  Facsimile (949) 369-3701

6  Jay S. Auslander (admitted pro hac vice)
   jauslander@wilkauslander.com
7  Eric Snyder (admitted pro hac vice)
   esnyder@wilkauslander.com
8  **WILK AUSLANDER LLP**
   825 Eighth Avenue, Ste. 2900
9  New York, NY 10019
   Telephone (212) 981-2300
10 Facsimile (212) 981-2316
   *Pro Hac Vice*
11
   *Attorneys for Standard General L.P.,*
12 *Standard General Master Fund, L.P. and*
   *P Standard General Ltd.*
13

14              **UNITED STATES BANKRUPTCY COURT**

15      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

16                                    Case No. 2:22-bk-11335-VZ

17                                    Chapter 11

18 In re:                             **REPLY IN SUPPORT OF THE MOTION FOR**
                                      **RELIEF FROM THE AUTOMATIC STAY**
19 DOV ARIEH CHARNEY,                 **UNDER 11 U.S.C. § 362 (ACTION IN**
                                      **NONBANKRUPTCY FORUM)**
20            Debtor.

21                                    Date:       April 26, 2022
                                      Time:       10:30 A.M.
22                                    Place:      Courtroom 1368
                                                  United States Bankruptcy Court
23                                                255 E. Temple Street,
                                                  Los Angeles, CA 90012
24

25

26

27

28

_____
         REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ............................................1

II.     ARGUMENT ....................................................................2

    A.      The Stay Does Not Affect the Motion to Amend Judgment Because the Motion Is Not Property of Charney's Estate .................................2

        1.      California Law Does Not Recognize Generalized Alter Ego Claims................2

        2.      Even Under Charney's View, Judgment Creditors' Motion to Amend Does Not Belong to the Bankruptcy Estate...............................4

    B.      To The Extent the Removed Actions Are Property of The Estate, Cause Exists to Grant Relief from The Automatic Stay.....................6

        1.      Legal Standard ...........................................6

        2.      The Relevant *Curtis* Factors Establish Cause to Lift the Automatic Stay.........7

        3.      Whether the Action Primarily Involves Third Parties (Factor #6) ..................7

            a.      Whether the Foreign Proceedings Have Progressed to the Point Where the Parties Are Prepared for Trial (Factor #11) ..................8

        4.      The Remaining *Curtis* Factors All Weigh in Favor of Stay Modification ........8

            a.      Whether the Relief Will Result in a Partial or Complete Resolution of the Issues (Factor #1)..............................8

            b.      The Lack of any Connection with or Interference with the Bankruptcy Case (Factor #2).................................9

            c.      Whether the Foreign Proceeding involves the Debtor as a Fiduciary (Factor #3)..............................11

            d.      Whether a Specialized Tribunal has been Established to Hear the Particular Cause of Action and that Tribunal has the Expertise to Hear such Cases (Factor #4) ..........................11

            e.      Whether the Debtor's Insurance Carrier has Assumed Full Financial Responsibility for Defending the Litigation .......................12

            f.      Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties (Factor #7) ..........................12

            g.      The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties (Factor #8)...13

            h.      The Impact of the Stay and the "Balance of Hurt" (Factor #10) .........15

C.    Cause Exists to Lift the Automatic Stay Because Debtor Filed This Case
      in Bad Faith....................................................................................................16

D.    The Court Should Deny the Debtor's Request to Defer Determining Stay-Relief Until
      a U.S. Trustee Appoints a Committee of Unsecured Creditors ...................................19

III.    CONCLUSION.................................................................................................19

TABLES OF CONTENTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

### <u>Cases</u>

4

*Ahcom, Ltd. v. Smeding*,

5
 623 F.3d 1248 (9th Cir. 2010) ....................................................... 2, 3, 10

6

*Harris v. Fidelity & Deposit Co. (In re Harris)*,
 7 B.R. 284 (S.D.Fla.1980) ................................................................ 14

7

*Idaho v. Arnold (In re Arnold)*,

8
 806 F.2d 937 (9th Cir. 1986) .............................................................. 16

9

*In re American Spectrum Realty, Inc.*,
 540 B.R. 730 (Bankr. C.D. Cal. 2015)................................................... 11

10

*In re Badax, LLC*,

11
 2019 WL 5688151 (Bankr. C.D. Cal. Nov. 1, 2019) ............................... 7

12

*In re Bergmann*,
 599 B.R. 348 (Bankr. D. Idaho 2019) .............................................. 12, 13

13

*In re Bussmann*,

14
 2021 WL 4483105 (Bankr. D. Or. Sept. 30, 2021)................................. 15

15

*In re Conejo Enters*,
 96 F.3d 346 (9th Cir. 1996) .............................................................. 14

16

*In re Crowe*,

17
 2021 WL 812928 (Bankr. D. Ariz. Feb. 25, 2021)............................. 8, 11

18

*In re Curtis*,
 40 B.R. 795 (Bankr. D. Utah 1984) ..................................................... 11

19

*In re Cytodyn of New Mexico, Inc*.

20
 374 B.R. 733 (Bankr. C.D. Cal. 2007).................................................... 3

21

*In re Financial Oversight and Management Board for Puerto Rico*,
 618 B.R. 619 (D.P.R. 2020)................................................................. 6

22

*In re Horizon Womens Care Prof'l LLC*,

23
 506 B.R. 553 (Bankr. D. Colo. 2014) .............................................. 10, 12

24

*In re Johnson*,
 2006 WL 6593254 (Bankr. N.D. Ga. Oct. 11, 2006)............................. 14

25

*In re Kemble*,

26
 776 F.2d 802 (9th Cir. 1985) .......................................................... 13, 14

27

*In re Korean Western Presbyterian Church of Los Angeles*,
 618 B.R. 282 (Bankr. C.D. Cal. 2020)..................................................... 9

28

TABLES OF CONTENTS AND AUTHORITIES

*In re Landmark Fence Co.*,
   424 B.R. 461 (Bankr. C.D. Cal. 2010)................................................................. 13

*In re Martha Washington Hosp.*,
   157 B.R. 392 (N.D. Ill. 1993) ............................................................................. 15

*In re Mense*,
   509 B.R. 269 (Bankr. C.D. Cal. 2014).................................................................. 16

*In re Norvell*,
   2021 WL 5920718 (Bankr. S.D. Ohio Dec. 15, 2021) .......................................... 14

*In re Oklahoma P.A.C. First Ltd. P'ship*,
   122 B.R. 394 (Bankr. D. Ariz. 1990).................................................................... 16

*In re Plumberex Specialty Prod., Inc.*,
   311 B.R. 551 (Bankr. C.D. Cal. 2004).................................................................... 6

*In re Powers*,
   135 B.R. 980 (Bankr. C.D. Cal. 1991).................................................................. 16

*In re Roger*,
   539 B.R. 837 (C.D. Cal. 2015) ......................................................................... 6, 7

*In re San Clemente Ests.*,
   5 B.R. 605 (Bankr. S.D. Cal. 1980) ..................................................................... 15

*In re Shaffer*,
   563 B.R. 301 (Bankr. D. Ariz. 2016) ................................................................... 10

*In re St. Paul Self Storage Ltd. P'ship*,
   185 B.R. 580 (B.A.P. 9th Cir. 1995)......................................................... 12, 16, 17

*In re Taipin*,
   2013 WL 3936377 (Bankr. D. Haw. July 30, 2013)............................................... 17

*In re Timmer*,
   423 B.R. 870 (Bankr. N.D. Iowa 2010) .................................................................. 6

*In re Trammell Fam. Orange Beach Properties LLC*,
   567 B.R. 207 (Bankr. M.D. Ala. 2017).................................................................... 9

*In re Tucson Estates, Inc.*,
   912 F.2d 1162 (9th Cir. 1990). ............................................................................. 7

*In re Wang*,
   2010 WL 6259970 (B.A.P. 9th Cir. Nov. 10, 2010)........................................ *passim*

*In re Woodward & Lothrop Holdings, Inc.*,
   205 B.R. 365 (Bankr. S.D.N.Y. 1997) .................................................................. 13

*In re Yukon Enterps., Inc.*,
   39 B.R. 919 (Bankr. C.D. Cal. 1984)................................................................... 16

iv

*Kalb, Vorhees & Co. v. Am. Fin. Corp.*,
 8 F. 3d 130 (2d Cir. 1993) ................................................................ 4

*Kayne v. Ho*,
 2013 WL 12120081 (C.D. Cal. Nov. 4, 2013) ............................... 3, 10

*Landis v. N. Am.Co.*,
 299 U.S. 248 (1936) ........................................................................ 19

*Little Creek Dev. Co. v. Commonwealth Mrtg. Corp. (In re Little Creek Dev. Co.)*,
 779 F.2d 1068 (5th Cir. 1986) ......................................................... 16

*Matter of R&S St. Rose Lenders, LLC*,
 748 F. App'x 753 (9th Cir. 2018) ..................................................... 14

*Mesler v. Bragg Mgmt. Co.*,
 39 Cal. 3d 290 (1985) ........................................................................ 3

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
 465 U.S. 75 (1984) ........................................................................... 14

*Pashard, Inc. v. Patel (In re Patel)*,
 291 B.R. 169 (Bankr. D. Ariz. 2003) ............................................... 14

*Robi v. Five Platters, Inc.*,
 838 F.2d 318 (9th Cir. 1988) ........................................................... 14

*Shaoxing County Huayue Import & Export v. Bhaumik*,
 191 Cal. App. 4th 1189 (Cal. Ct. App. 2011) .............................. 3, 10

*State of Idaho v. Arnold (In re Arnold)*,
 806 F.2d 937 (9th Cir. 1986 ............................................................ 16

*Transamerica Insurance Co. v. Olmstead (In re Olmstead)*,
 608 F.2d 1365 (10th Cir.1979) ........................................................ 14

*Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*,
 2004 WL 1774223 (N.D. Cal. Aug. 6, 2004) ................................ 4, 6

*United Enters. v. ACI Sunbow, LLC (In re ACI Sunbow, LLC)*,
 206 B.R. 213 (Bankr. S.D. Cal. 1997) ............................................. 16

*Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*,
 945 F.Supp.603 (S.D.N.Y.1996) ..................................................... 4, 6

*White v. City of Pasadena*,
 671 F.3d 918 (9th Cir. 2012) ........................................................... 14

**<u>Statutes</u>**

11 U.S.C. § 362 ................................................................... 1, 6, 16, 19

Judgment Creditors Standard General L.P., Standard General Master Fund, L.P., and P Standard General Ltd. (together, "Judgment Creditors") respectfully submit this reply to the debtor's opposition (the "Opposition") [Dkt. No. 67] to their motion for relief from the automatic stay (the "Stay Relief Motion" "Mot.") to permit the State Actions to proceed once the Court remands them to California Superior Court for further adjudication [Dkt. No. 61].

## I.    PRELIMINARY STATEMENT

As set forth in Judgment Creditors' motions for remand filed in the Adversary Proceedings[1] (the "Remand Motions" and "Remand Replies"), the State Actions should be remanded because debtor Dov Charney ("Charney" or "Debtor") removed them in bad faith and because the relevant factors overwhelmingly favor remand. Moreover, Judgment Creditors' motion in the First Action[2] seeking to add third-party judgment debtors – a hearing on which Charney avoided through his last-minute removal – does not implicate property of the estate and therefore is not subject to the automatic bankruptcy stay.

To the extent the Court determines that either the First Action or the other two State Actions implicate estate property, however, the Court should grant relief from the bankruptcy stay to allow Judgment Creditors to proceed under applicable non-bankruptcy law to enforce their remedies in California state court. Debtor's bad faith, as well as analysis of the applicable *Curtis* factors, provides sufficient cause to grant relief from the automatic stay. Stay relief is especially appropriate given the prevalence of state law issues in the State Actions, the tactical timing of Debtor's bankruptcy petition, and the numerous non-debtor entities involved in the State Actions.

Accordingly, and as set forth more fully below, should the Court remand the State Actions, the Court should also grant stay relief to the extent necessary to permit those actions to proceed.

---

[1] *See LTD et al. v. Charney et al.*, case no. 2:22-ap-01064-VZ, Adv. Dkt. Nos. 7, 8, 9, 15; *Charney v. Standard General, L.P., et al.*, case no. 2:22-ap-01068-VZ, Adv. Dkt. Nos. 9, 10, 11, 16; *Standard General, L.P., et al. v. Charney et al.*, case no. 2:22-ap-01069-VZ, Adv. Dkt. Nos. 9, 10, 11, 16.

[2] Capitalized terms used herein shall retain the meaning ascribed to them in Judgment Creditors' *Memorandum of Points and Authorities in Support of Their Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Action in NonBankruptcy Forum*, dated April 5, 2022, unless otherwise indicated. *See* Dkt. No. 61-1.

## II.    ARGUMENT

### A.    The Stay Does Not Affect the Motion to Amend Judgment Because the Motion Is Not Property of Charney's Estate[3]

As a preliminary matter, this Court should find that the automatic bankruptcy stay does not prohibit determination of Judgment Creditors' Motion to Amend because that motion is not property of Charney's bankruptcy estate. As set forth in the Remand Motions and Remand Replies, the Motion to Amend in the First Action is not property of Charney's estate for two reasons. First, California law does not recognize any generalized alter ego claim that a bankruptcy trustee/debtor could assert. Second, even if it did recognize the existence of such a generalized claim, the Motion to Amend still would remain outside Charney's estate because the injury at issue there is particular to Judgment Creditors.

### 1.    California Law Does Not Recognize Generalized Alter Ego Claims.

In the Opposition, Charney implies that Judgment Creditors' Motion to Amend is "property of the Debtor's estate . . . subject to the automatic stay." Opp. at 12. But Judgment Creditors' Motion to Amend, which seeks to add alter ego third parties as additional judgment debtors, belongs to Judgment Creditors, not the bankruptcy estate. Mot. at 20.

In fact, as a matter of California law, a bankruptcy trustee would be unable to prosecute the Motion to Amend on behalf of "all" creditors. *See Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1252 (9th Cir. 2010) (holding that bankruptcy "trustee could not bring [alter ego claim] against third parties under California law" but creditors could).[4] As the cases Judgment Creditors cite in their Remand Motions and Remand Replies reflect, there is no "general alter ego claim" under California law. *Ahcom,* 623 F.3d at 1251. "California law does not recognize an alter ego claim or cause of action that will allow a corporation and its shareholders to be treated as alter egos *for purposes of all the corporation's debts.*" *Id.* at 1251

---

[3] Judgment Creditors incorporate by reference herein the summary of procedural facts outlined in the motions to remand filed in Remand Motions and Remand Replies, and all supporting evidence currently pending in the related Adversary Proceedings. A true and correct copy of the Reply to the Motion to Remand filed in Case No. 2:22-ap-01068-VZ is attached Exhibit 1 to Judgment Creditors Request for Judicial Notice in Further Support of Their Motion to for Relief from the Automatic Stay ("Stay Relief Reply RJN"). The Remand Motions and Remand Replies seek identical relief in each of the Adversary Proceedings.

[4] Indeed, "[a] bankruptcy trustee has no standing to sue third parties on behalf of the estate's creditors, but may assert only claims held by the bankrupt entity." *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189, 1197 (Cal. Ct. App. 2011).

(emphasis added). Instead, an alter ego "claim" is procedural. *Id.*; *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th 1189, 1189 (Cal. Ct. App. 2011). "The issue is not so much whether, *for all purposes*, the corporation is the 'alter ego' of its stockholders or officer, [or] whether the very purpose of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether *in the particular case presented and for the purposes of such case* justice and equity can best be accomplished and fraud and unfairness defeated by a disregard of the distinct entity of the corporate form." *Ahcom*, 623 F.3d at 1251 (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290 (1985) (emphasis in original)).

For example, like the creditors in *Kayne v. Ho*, 2013 WL 12120081, at *4 (C.D. Cal. Nov. 4, 2013), Judgment Creditors "assert[] alter ego liability under a 'single enterprise theory,'" pointing to improper assets transfers as "evidence" of the alter ego relationship, "and that there would be an inequitable result if the acts in question are treated as those of the corporation alone." *Id.*[5] Moreover, like the creditor in *Shaoxing County Huayue Import & Export v. Bhaumik*,[6] in their Motion to Amend, Judgment Creditors seek relief "based on an alter ego theory of liability." Finally, like in *In re Cytodyn of New Mexico, Inc.*,[7] Judgment Creditors do not assert any claim "on Debtor's behalf." *Cytodyn*, 374 B.R. at 740.

Moreover, the Motion to Amend does "not seek the return of assets to the debtor" but only judgment amendment to facilitate judgment enforcement. *Kayne*, 2013 WL 12120081, at *4, *7 ("Plaintiffs do not seek redress for an injury to the debtor corporation; they seek to show the existence of an alter ego relationship, and the likelihood of an inequitable result if the corporate form is not disregarded.")

For these reasons, as a threshold matter, this Court should determine that the Motion to Amend is not property of the estate and, therefore, that the Motion does not implicate the automatic stay.

---

[5] *See, e.g.,* Judgment Creditors' Request for Judicial Notice in Further Support of Their Remand Motion ("Remand Reply RJN") Exh. 2 at 5.

[6] 191 Cal. App. 4th 1189, 1193 (Cal. Ct. App. 2011).

[7] 374 B.R. 733 (Bankr. C.D. Cal. 2007).

### 2. Even Under Charney's View, Judgment Creditors' Motion to Amend Does Not Belong to the Bankruptcy Estate

Even if California law did provide for a "general alter ego claim" that a bankruptcy estate "fiduciary"[8] could assert on behalf of all creditors, as Charney contends – it does not, though, for all of the reasons above – the Motion to Amend is property of Judgment Creditors and not the bankruptcy estate because Judgment Creditors' allegations of alter ego status are not "general." *See Trustees of the Bricklayers Local 7 Pension Trust v. Stileitaliano International*, 2004 WL 1774223, *4 (N.D. Cal. Aug. 6, 2004) (plaintiff pleaded particularized injury where "[p]laintiffs allege[d] that the unity of interest between [the alter ego] Defendants and [the bankrupt corporation], along with [the corporation's] inadequate capitalization, was accomplished 'solely for the purpose of avoiding their obligations to Plaintiffs . . .'").

Indeed, Judgment Creditors allege that the proposed alter ego judgment debtors are part of a single enterprise whose specific purpose is evading *Judgment Creditors*' judgments against Charney, as they point out in, for example, footnote 30 of the Remand Motion. Courts have found particularized injury to a creditor where the conduct that supports piercing the corporate veil is the same conduct that directly harmed the creditor. *See, e.g., Variable-Parameter Fixture Development Corp. v. Morpheus Lights, Inc.*, 945 F.Supp.603, 607-08 (S.D.N.Y.1996) (plaintiff asserted an individualized alter ego claim against the director and president of a bankrupt company because it alleged that he had participated "directly and actively" in infringing its patent, and was liable for damages as a result); *Trustees of the Bricklayers*, 2004 WL 1774223, *4 (N.D.Cal.Aug. 6 2004).

Here, Judgment Creditors do not assert any "general" alter ego claim, "of the type that can be brought by any creditor of the Debtor." *Kalb, Vorhees & Co. v. Am. Fin. Corp.*, 8 F. 3d 130, 132-133 (2d Cir. 1993). Rather, Judgment Creditors assert – and demonstrate – that Charney created multiple alter egos and diverted his funds "solely for the purpose of avoiding his obligations to [Judgment Creditors]." *Trustees of the Bricklayers*, 2004 WL 1774223 at *4. Judgment Creditors have adduced significant evidence of this, such as that in spring of 2016 – soon after Judgment Creditors obtained their first

---

[8] Charney has made it clear that, despite the removal of the First Action, he has no intention of prosecuting the claim and instead contends final adjudication should be determined by a "fiduciary" in the form of a Creditors' Committee and, if there no Creditors' Committee, another estate "fiduciary." *See* Remand Opp. at 7, 8, 11, 13, 20 and 21; Opp. at 8, 17, 26.

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

judgment against Charney and while the litigation giving rise to the second and third judgments was pending – all of the following were formed: ACMS and Apex RE, which the State Court has already ruled are Charney's alter egos; LA Apparel, of which Charney is CEO; and MFT, a family trust made up entirely of Charney's immediate family, which originally owned all shares of LA Apparel and remains its primary shareholder, and whose named beneficiary, Maya Charney, is paying Charney's legal bills in this bankruptcy proceeding. Remand Reply RJN Exh. 3 at 2.

Notably, in an email dated December 2016, LA Apparel's CFO *admitted* in response to a question from an LA Apparel lender that *ACMS' very purpose was to shield Charney's assets from Judgment Creditors*. *See* Declaration of Tony Bisconti in Support of Judgment Creditors' Reply to Their Motion to Remand State Court Action to California Superior Court ("Remand Reply Bisconti Decl.") Exh. A ("the Art Commerce and manufacturing [sic] LLC is 100% owned by Dov Charney primarily set up to shield assets and income from an ongoing lawsuit with Standard General, et al in the American Apparel litigation [.]"). This is no uninformed opinion: These are the words of LA Apparel's CFO, describing motives of its Chief Executive Officer, debtor Charney.

In short, in support of their Remand Motions and Remand Replies, Judgment Creditors present abundant evidence demonstrating that – like alter egos ACMS and Apex RE, through which Charney among other things diverted payments for his benefit from LA Apparel for "CEO services" and rent for purported use of his home[9]– the proposed alter ego judgment debtors LA Apparel, MFT's Trustee, and Schmatta LA were part of *a single enterprise devoted to thwarting Judgment Creditors' Judgments against Charney*.  Remand Motion RJN Exh. 2 at 5.[10]

Thus, the injury at issue is particular to Judgment Creditors. Tellingly, no other creditor has made any objection to the remand Judgment Creditors seek. Thus, even under Charney's incorrect interpretation of prevailing law, Judgment Creditors' Motion to Amend seeking to add alter egos as

---

[9] *See* Declaration of Eric Snyder in Support of Judgment Creditors' Motion to Remand State Court Action to California Superior Court [Dkt # 10] ("Remand Motion Snyder Decl.") Exhs. D, E, F.

[10] *See also* Remand Reply RJN Exh. 4 at 267: 17-21 (When asked why he closed all bank accounts in his name, and why LA Apparel stopped transferring funds to Apex RE and ACMS after those entities were added as judgment debtors, Charney testified, "Being a . . . judgment debtor, if you have an account and it gets wiped out, I think it's pretty logical where the judgment debtor says, That's not the safest place to put my money if I'[m] trying to run my life").

additional judgment debtors is not property of the bankruptcy estate. *See Trustees of the Bricklayers*, 2004 WL 1774223, *4; *Variable-Parameter*; 945 F.Supp. at 607-08. For this additional reason, the Court should determine that the Motion to Amend is particular to Judgment Creditors and is not subject to the bankruptcy stay.

**B.    To The Extent the Removed Actions Are Property of The Estate, Cause Exists to Grant Relief from The Automatic Stay**

**1.    Legal Standard**

In the face of Judgment Creditors' prima facie showing in their moving papers that the automatic bankruptcy stay should be lifted, the burden shifted to Charney to demonstrate the stay should remain in place. *In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004); *see also In re Financial Oversight and Management Board for Puerto Rico*, 618 B.R. 619 (D.P.R. 2020), *aff'd*, 989 F.3d 170 (1st Cir. 2021) (movant for relief from automatic bankruptcy stay has initial burden of establishing prima facie eligibility for relief from the stay; after that initial burden is met, the moving party bears the ultimate burden of proof on the issue of the debtor's equity in property, and the party opposing stay relief has the ultimate burden of proof on all other issues); *see also In re Timmer*, 423 B.R. 870 (Bankr. N.D. Iowa 2010) (Moving party has the burden to show that "cause" exists to lift the stay, after which the burden shifts to the debtor to demonstrate why the stay should remain in place). Charney has not satisfied that burden, as set forth below.

As demonstrated above (Arguments I & II), the Motion to Amend is not property of Charney's estate and does not implicate the bankruptcy stay. However, to the extent that this Court determines that any or all of the removed actions are subject to the stay, then cause exists to modify the stay to allow the actions to proceed.

"Although the term 'cause' is not defined in the Code, courts in the Ninth Circuit have granted relief from the stay under § 362(d)(1) when necessary to permit pending litigation to be concluded in another forum if the non-bankruptcy suit involves multiple parties or is ready for trial." *In re Roger*, 539 B.R. 837, 845 (C.D. Cal. 2015) (reversing bankruptcy court and finding that stay should have been lifted when non-bankruptcy litigation included multiple non-debtor parties and bankruptcy was filed three months before trial); *In re Wang*, 2010 WL 6259970, at *5 (B.A.P. 9th Cir. Nov. 10, 2010). Courts also

consider whether permitting the conclusion of pending litigation is in the interest of judicial economy or within the expertise of a state court. *Wang*, 2010 WL 6259970, at *5.

While recognizing that the existence of multiple parties and whether the case is ready for trial are the two primary factors in considering whether "cause" exists to permit litigation outside the bankruptcy court to proceed, courts analyze a series of nonexclusive factors known as the "*Curtis* factors."[11] *In re Badax, LLC*, 2019 WL 5688151, at *6 (Bankr. C.D. Cal. Nov. 1, 2019). Charney agrees[12] that the *Curtis* factors represent the appropriate standard when determining "cause" to modify the bankruptcy stay to allow litigation to continue. Opp. at 15.

### 2.  The Relevant *Curtis* Factors Establish Cause to Lift the Automatic Stay.

The incontrovertible evidence in this case establishes that sufficient cause exists to grant Judgment Creditors relief from the automatic stay under the relevant *Curtis* factors. Given that the Ninth Circuit in *In re Tucson Estates, Inc.*[13] and the District Court in *In re Roger*[14] have determined that the involvement of third parties and proximity to trial are the two most important *Curtis* factors, we will analyze those factors initially.

### 3.  Whether the Action Primarily Involves Third Parties (Factor #6)

The State Actions involve numerous non-debtor parties. The First Action includes two non-debtor parties: Apex RE and ACMS. Stay Relief Mot. Bisconti Decl. Exh. 1 at 5.  Moreover, the First Action seeks to add several non-debtor entities under an alter ego theory, including the apparel company Debtor founded, Debtor's father as a trustee of a related trust, and a company wholly owned by Debtor.  *Id.* at 6.

---

[11] The "*Curtis* factors," are as follows: (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether the litigation in another forum would prejudice the interests of other creditors, the creditor's committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination; (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interests of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and (12) The impact of the stay and the "balance of hurt."

[12] The parties agree that factors 8 and 9 do not apply.

[13] 912 F.2d 1162 (9th Cir. 1990).

[14] 539 B.R. 837 (C.D. Cal. 2015).

The Third Action also includes five defendants besides Debtor, including three entities (Apex RE, ACMS, and LA Apparel) that previously took the position that Debtor's bankruptcy stayed the entire action. *Id.* at 18, 25. Therefore, this factor weighs in favor of granting stay relief.

### a. Whether the Foreign Proceedings Have Progressed to the Point Where the Parties Are Prepared for Trial (Factor #11)

The records in the State Actions are voluminous, involving highly intensive facts and years of litigation in state court as Charney admits. *See* Opp. at 20-21. This clearly favors granting stay-relief. *See In re Crowe*, 2021 WL 812928, at *9 (Bankr. D. Ariz. Feb. 25, 2021) (When considering this factor, the Court stated as follows: "[b]ased upon pleadings that have been filed on this Court's docket, the [state] record is voluminous…[the state action] has been pending for more than four years and is approaching the trial stage. This factor weighs in favor of stay relief.").

In the First Action, motions[15] to amend the judgment to add LA Apparel, MFT, and Schmatta LA as judgment debtors and a preliminary injunction preventing LA Apparel, MFT, and Schmatta from transferring or dissipating assets were scheduled to be determined on March 11, 2022, *the day after Charney filed for bankruptcy*. The Third Action is scheduled for trial on June 13, 2022.

Therefore, the two most important factors weigh in favor of lifting the stay to allow the State Actions to continue with respect to all parties, including Charney.

### 4. The Remaining *Curtis* Factors All Weigh in Favor of Stay Modification

### a. Whether the Relief Will Result in a Partial or Complete Resolution of the Issues (Factor #1)

Granting Judgment Creditors relief from the automatic stay will allow for complete resolution of the State Actions. Upon remand and lifting of the automatic stay, the state court will be able to adjudicate numerous motions that have been pending in the State Actions, allowing those matters to advance towards final resolution. The First Action will continue adjudication of at least two pending motions, including a request by Judgment Creditors to amend a judgment by adding various non-debtor entities under an alter ego theory and the motion for appointment of a receiver over Charney and his various alter egos. *See* Remand Motion Bisconti Decl., Ex. 1 at 6-7. The Second and Third Actions will also continue towards

---

[15] There is no "trial" in the First Action because the issues all relate to post-judgment enforcement.

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

final resolution, including the adjudication of another five pending motions in the Third Action. *Id*. at 11-12.

Moreover, if the Court grants the Motions to Remand, as it should, then granting stay-relief as to the State Actions is the logical corollary. *See In re Trammell Fam. Orange Beach Properties LLC*, 567 B.R. 207, 211 (Bankr. M.D. Ala. 2017) ("Having decided to transfer the fraudulent conveyance suit back to the Southern District, the remainder of the issues are largely housekeeping. It is illogical to transfer the fraudulent conveyance suit without also granting relief from the automatic stay; thus, permitting the District Court to proceed with the suit.").

Charney argues that modifying the stay will not result in resolution "because the creditor's committee may decide to substitute in as the true party in interest." Opp. at 15. A fundamental problem with this argument is that there is no Creditors' Committee and not one creditor outside of Judgment Creditors – not one – has demonstrated any interest in sitting on a Creditors' Committee.

Therefore, the first *Curtis* factor favors stay relief.

### b. The Lack of any Connection with or Interference with the Bankruptcy Case (Factor #2)

Lifting the stay to permit the State Actions to proceed following their remand will not interfere with Debtor's bankruptcy. The State Actions concern primarily issues of state law and Judgment Creditors' efforts to collect on their judgments not only from Debtor, but various non-debtors who are not before this Court. *See* Remand Motion Bisconti Decl., Ex. 1 at 14, 18-20. As set forth in more detail in the Remand Motion, Charney filed this bankruptcy case as a litigation tactic, on the eve of a hearing in one of the State Actions on numerous issues concerning Judgment Creditors' ability to enforce their judgment. *Id.* at 12. Resolution of those issues will not interfere with this bankruptcy case and in fact will advance the case (to the extent it is not dismissed) by clarifying the issues to be resolved in this case and by potentially reducing Judgment Creditors' claims against the estate to the extent they are able to collect on their judgments pursuant to the State Court proceedings. *See, e.g., In re Korean Western Presbyterian Church of Los Angeles*, 618 B.R. 282, 289-90 (Bankr. C.D. Cal. 2020) (concluding that the second *Curtis* factor was satisfied where the record showed that the "Bankruptcy Court would be reinventing the wheel" by delving into "issues that were already well underway in the State Court," and where "resolving these

issues in State Court is the most expeditious and efficient way to address these issues," particularly where "the underlying legal and factual disputes are all state law issues."); *In re Horizon Womens Care Prof'l LLC*, 506 B.R. 553, 558 (Bankr. D. Colo. 2014) ("To leave the state court appeal unresolved would hinder the ability of the Debtor to move forward with its bankruptcy case."); *In re Shaffer*, 563 B.R. 301, 307 (Bankr. D. Ariz. 2016) ("The resolution of the eviction action will have [no] interfere[nce] with the bankruptcy case. In fact, resolution of the lease termination issues will assist the bankruptcy court in subsequently resolving the Debtor's motion to assume the Ground Lease which was recently filed").

Moreover, contrary to the debtor's assertions that he "will have to incur the additional costs and expenses of special litigation counsel, which will necessarily reduce the distribution pool available for other creditors," Opp. at 16, the hearing on the Judgment Creditors' request to add alter-ego entities is the only procedure left, absent any appeals. *See In re Wang*, 2010 WL 6259970, at *9 ("The bankruptcy court correctly analyzed the Curtis Factors and found that because the litigation on the State Court Complaint had progressed to the point where the parties had only the opening briefs left to be submitted for the Appeal, ***there was minimal cost or effort*** in allowing the Appeal to proceed.") (emphasis added). The state court was ready to decide that issue before the Debtor filed this case and removed the State Actions. Any cost in allowing the pending issues to be resolved by the state court following remand is dwarfed by the cost that would be incurred litigating these issues, from scratch, before this Court.

Further, as a matter of law, Judgment Creditors' request to add various non-debtor entities as additional judgment debtors in the First Action ***is not part*** of Debtor's bankruptcy estate. *See Ahcom, Ltd. v. Smeding*, 623 F.3d at 1253 (creditor, not bankruptcy trustee, owned alter ego claim seeking to pierce the corporate veil to hold individuals responsible for bankrupt corporation's action); *Kayne v. Ho*, 2013 WL 12120081 at *4-*5 (judgment creditors, not bankruptcy trustee, had standing to assert claim seeking to impose alter ego liability, which alleged that defendants had stripped judgment debtor of its assets); *Shaoxing County Huayue Import & Export v. Bhaumik*, 191 Cal. App. 4th at 1193 ("the creditor's action to hold the individual liable as an alter ego for a creditor's substantive causes of action against a bankrupt corporation was not the property of the bankruptcy estate"). Therefore, determination of the relevant motion cannot interfere in administration of Debtor's bankruptcy, weighing in favor of granting stay relief.

Charney argues, without citing to case law, that the Remand Motions should remain stayed to permit the Committee or other fiduciary of the estate to evaluate and pursue the claims. Opp. at 17-18. There is no other fiduciary, however. Since Charney is not, and cannot, prosecute the Motion to Amend, Judgment Creditors should be allowed to continue to do so.

### c.  Whether the Foreign Proceeding involves the Debtor as a Fiduciary (Factor #3)

While Charney is not a fiduciary in the State Actions, the impact of this factor is neutral for individual debtors.  *See In re Curtis*, 40 B.R. 795, 805 (Bankr. D. Utah 1984) (In a case involving individual defendants filing a joint chapter 11, the Court stated the following: "*Debtor as a Fiduciary.* This factor is apparently not applicable to this proceeding.") (original emphasis); *In re Crowe*, 2021 WL 812928, at *6 (Bankr. D. Ariz. Feb. 25, 2021) (finding this factor "neutral" for an individual defendant being sued in his "'individual capacity and/or as an officer, owner, manager and/or partner' of various entities.").  Therefore, this factor is at worst neutral and does not weigh in favor of either party.

### d.  Whether a Specialized Tribunal has been Established to Hear the Particular Cause of Action and that Tribunal has the Expertise to Hear such Cases (Factor #4)

While the State Actions were pending before the California state court and not a "specialized tribunal," this factor nonetheless favors granting relief. As set forth in the Motion and explained in the Motion to Remand, the State Actions here involve years of litigation before the state court and involve issues arising under California law. *See* Stay Relief Mot. Bisconti Decl., Ex. 1 at 6-7, 11-12.  The state court before which the State Actions have been pending for years are intimately familiar with the facts and history of these parties as well as the various non-debtor parties that are currently not before this Court.

Therefore, this factor weighs in favoring of granting stay-relief. *See In re American Spectrum Realty, Inc.*, 540 B.R. 730, 740-41 (Bankr. C.D. Cal. 2015) (concluding that this factor supported lifting the automatic stay where state court had general jurisdiction to decide state law causes of action and expertise to hear and decide issues arising under state law, as "the optimal court to decide these state law issues is the [] state court who has dealt with this litigation for over two-and-a-half years.").

1

### e. Whether the Debtor's Insurance Carrier has Assumed Full Financial Responsibility for Defending the Litigation

While Charney asserts that he does not have an insurance carrier for the defense of the State Actions, he offers no support for his contention that this factor weighs against lifting the stay because it "ultimately will reduce the value of the estate." Opp. at 18. In reality, regardless of Charney's insurance situation, granting stay-relief will ensure the efficient use of judicial and party resources to adjudicate these claims. *See In re Wang*, 2010 WL 6259970, at *9. It will be less expensive to allow the State Actions to be finally resolved by the state court, and the Debtor will have to deal with Judgment Creditors' claims in this case (if any) regardless of whether he has insurance. And as explained in the Stay Relief Motion, if Judgment Creditors are allowed to pursue what they are owed from non-debtor parties, that may in fact *enhance* the value of the estate by reducing the amount Judgment Creditors seek to recover from Charney.

Accordingly, this factor weighs in favor of granting relief from stay, but at worst is neutral.

### f. Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties (Factor #7)

Litigation in state court is necessary for final liquidation of the claims between Debtor and Judgment Creditors. In arguing otherwise, the Debtor repeats his arguments that lifting the stay will result in increased litigation costs and a more drawn-out process than this Court's "streamlined claims adjudication procedures." *See* Opp. at 18-20. These arguments have already been addressed above and are without merit. *See Horizon Womens*, 506 B.R. at 559 ("The fact that the lawful and appropriate resolution of a legal claim may result in a reduced potential for recovery by the estate ***does not constitute legal prejudice*** to the rights of creditors.") (emphasis added); *In re Bergmann*, 599 B.R. 348, 357 (Bankr. D. Idaho 2019) ("there is nothing in the record to suggest the bankruptcy estate would be prejudiced by allowing the Idaho State Court to decide the issue").

Moreover, with interest, the judgment amount in the First Action totals over $35 million. Substantially all of this amount is unsecured, while Debtor's Schedule F reflects other unsecured debt equal to about $240,000. Dkt. No. 53. Therefore, Judgment Creditors' claims alone currently make up approximately 99% of Debtor's reported unsecured debt, so there is little prejudice to the interests of other creditors. *See In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 583 (B.A.P. 9th Cir. 1995)

1   (debtor's only significant asset was a claim against one creditor set to be tried in state court, and

2   bankruptcy court supervision of debtor's liquidation was not necessary to protect other creditors).

3   Charney cites two cases (Opp. at 20)[16] standing for the proposition that class actions should not

4   be allowed to proceed because of the additional cost. However, the long-pending removed actions are

5   not class actions but rather two judgment enforcement proceedings and a fraudulent transfer action that,

6   in large part, seek relief from non-debtor third parties, on account of particularized injury. Given the lack

7   of prejudice to Debtor's creditors or other interested parties, this factor weighs in favor of granting stay

8   relief.

9   Therefore, this factor weighs in favor of granting stay-relief.

10          **g.  The Interests of Judicial Economy and the Expeditious and Economical
                Determination of Litigation for the Parties (Factor #8)**

11  Several motions submitted in the State Actions are pending and awaiting adjudication. Apart from

12  the Remand Motions and Remand Replies before this Court, there are at least two pending motions in

13  the First Action, including a request to add additional judgment debtors under an alter ego theory and a

14  motion for appointment of a receiver, which have been briefed and scheduled for hearings.  Remand

15  Motion Bisconti Decl., Ex. 1 at 7-8.  Granting stay relief would permit a speedy determination of the

16  rights of Debtor and Judgment Creditors, as well as the non-debtor parties in the State Actions.  *See*

17  *Bergmann*, 599 B.R. at 357 (Granting stay relief will "allow litigation pending in this Court and the Idaho

18  State Court to proceed, thus encouraging the just and speedy determination of the legal rights of the

19  parties . . . it [also] allows the parties to continue litigation before a court familiar with the facts and issues

20  in dispute.").

21  Additionally, these State Actions have been proceeding for years and, as mentioned above,

22  involve numerous non-debtor parties. Thus, stay relief would advance judicial economy and expeditious

23  litigation for these parties. *See In re Wang*, 2010 WL 6259970, at *9.  Indeed, there are several cases that

24  have held that a "district court may properly consider the factor of judicial economy in deciding whether

25  to lift an automatic stay." *In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985) (citing *Transamerica Insurance*

26

27  _____

28  [16] *In re Woodward & Lothrop Holdings, Inc.,* 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) and *In re
    Landmark Fence Co*., 424 B.R. 461 (Bankr. C.D. Cal. 2010).

1    *Co. v. Olmstead (In re Olmstead),* 608 F.2d 1365, 1368 (10th Cir.1979) and *Harris v. Fidelity & Deposit*

2  *Co. (In re Harris)*, 7 B.R. 284 (S.D.Fla.1980)). In fact, "[t]he decision to lift the stay could be upheld on

3  this ground alone." *Kemble*, 776 F.2d at 807.

4       Charney argues that a single forum is preferable (Opp. at 20), again citing two cases[17] that are

5  either inapplicable or unhelpful to his position: In *Pashard*, the court *granted* the stay relief motion

6  related to motions pending as of the bankruptcy filing. 291 B.R. at 175 ("Stay relief will be granted to

7  permit the parties to litigate *to conclusion* the motions pending in the Riverside Bankruptcy Court for

8  remand of the two cases") (emphasis added).

9       In *In re Conejo Enters.*, 96 F.3d 346, 352 (9th Cir. 1996),[18] the court based its decision not to lift

10 the stay on the need to avoid duplication given the judgment creditors' eventual filing of a proof of claim.

11 But here, there is no need to litigate any proof of claim filed by Judgment Creditors because their

12 judgments are *final* and therefore the extent and validity of their claim is not subject to collateral attack.

13 *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("[A] federal court must give

14 to a state-court judgment the same preclusive effect as would be given that judgment under the law of

15 the State in which the judgment was rendered."); *White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir.

16 2012) ("California's claim preclusion doctrine provides that a "valid final judgment on the merits in favor

17 of a defendant serves as a complete bar to further litigation on the same cause of action."); *Robi v. Five*

18 *Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

19      Therefore, duplicate litigation is not a concern in this case: Judgment Creditors' claims resulting

20 from their judgments cannot be collaterally attacked in this court. *See Matter of R&S St. Rose Lenders,*

21 *LLC*, 748 F. App'x 753, 759 (9th Cir. 2018) (filing of proof of claim would be barred by claim preclusion

22 where "(1) the parties are the same in both lawsuits, (2) the earlier lawsuit resulted in a valid final

23 judgment, and (3) the claims raised in the later lawsuit were raised or could have been raised in the earlier

24 lawsuit"); *see also In re Norvell*, 2021 WL 5920718, at *3 (Bankr. S.D. Ohio Dec. 15, 2021) (holding

25 proof of claim was barred under doctrine of claim preclusion where state court issued "final decision on

26

27 [17] *Pashard, Inc. v. Patel* (*In re Patel*), 291 B.R. 169 (Bankr. D. Ariz. 2003) and *In re Johnson*, 2006
WL 6593254 (Bankr. N.D. Ga. Oct. 11, 2006).

28 [18] Cited in Opp. at 14, 20.

the merits" in suit involving the same parties and the subsequent proof of claim "a[rose] out of the same . . . transaction and involve[d] claims and defenses that could have been raised in state court").

### h. The Impact of the Stay and the "Balance of Hurt" (Factor #10)

Finally, the balance of hurt weighs in favor of granting stay relief.

Charney complains that "[i]f the automatic stay is lifted, Debtor will be forced to continue litigation with Standard in a non-bankruptcy forum to defend Debtor's interest in the pre-petition actions." Opp. at 22. While true, there is no prejudice to Debtor. The Motion to Amend seeks to add *non*-Debtor third parties (LA Apparel, Schmatta LA and MFT's Trustee) and the Third Action similarly names a number of *non*-Debtor defendants (in addition to Charney). And, while the Third Action seeks to avoid the transfer of Charney's Real Property among other things, Charney indicates in his Schedules (Sch. A/B Attachments, Qs. ## 1 & 2) that he *supports* this very outcome: "The Debtor intends to pursue an action in the bankruptcy case to get the title back."

Judgment Creditors have already been prejudiced by Debtor's relentless efforts to delay and hinder judgment enforcement, and they will continue to endure significant prejudice should the Court prohibit their long-awaited hearing on judgment amendment and pursuit of relief from the non-Debtor entities involved in the First and Third Actions in State Court. Remand Motion Bisconti Decl. Ex. 1 at 8, 16-17. Conversely, granting stay-relief will necessarily permit subsequent liquidation of the Judgment Creditors' claims, making it less likely that any "confirmed plan will be later impacted, and there is less need for future plan modifications." *Bussmann*, 2021 WL 4483105, at *2 (Bankr. D. Or. Sept. 30, 2021). (weighing in favor of stay-relief).[19] Litigation must occur at some point, and it benefits all parties to adjudicate this long-awaited hearing now. *Id.* ("Although the stay protects [d]ebtor from losing assets of the estate, the litigation must occur at some point. It benefits all parties to try the case now."). Additionally, as noted in the Stay Relief Motion, Judgment Creditors have even agreed to preserve any property that may constitute estate property that is collected in the State Actions pending either the

---

[19] The debtor's cases cited for this factor are irrelevant to the particular facts at issue here. *See, e.g., W.R. Grace*, 2007 WL 1129170 *2 (involving one unsecured creditor's claim among thousands for asbestos related injuries); *In re Martha Washington Hosp.*, 157 B.R. 392, 394 (N.D. Ill. 1993) (involving stay-relief for pursuit of a contribution claim, which the Bankruptcy Code expressly disallows and is not at issue here); *In re San Clemente Ests.*, 5 B.R. 605, 611 (Bankr. S.D. Cal. 1980) (denying stay-relief to foreclose on real property that had a significant equity cushion, which again, is not relevant here).

---

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

dismissal of this case or further order of the Court, which further protects against any "hurt" faced by the

Debtor. *See* Stay Relief Motion at 1.

In sum, the *Curtis* factors weigh in favor of granting stay relief to permit Judgment Creditors to

collect on their judgments in the State Actions and pursue their claims in the Third Action.

## C. Cause Exists to Lift the Automatic Stay Because Debtor Filed This Case in Bad Faith

As set forth in the Stay Relief Motion at 7, an independent reason exists to lift the stay here:

Charney's bad faith bankruptcy filing. "Good faith is required in the commencement and prosecution of

a chapter 11 case, and the lack thereof constitutes 'cause' for dismissal under § 1112(b)(1) and relief

from the automatic stay under § 362(d)(1)." *In re Mense*, 509 B.R. 269, 276 (Bankr. C.D. Cal. 2014)

(citations omitted). In fact, "[i]t is well settled throughout the circuits, including the Ninth, that 'cause'

for relief from stay under Section 362(d)(1) may include a finding by the Court that the debtor's petition

was filed in bad faith." *In re Powers*, 135 B.R. 980, 998 (Bankr. C.D. Cal. 1991) (citing *Idaho v. Arnold

(In re Arnold),* 806 F.2d 937, 939 (9th Cir. 1986)); *see also State of Idaho v. Arnold (In re Arnold)*, 806

F.2d 937, 939 (9th Cir. 1986) ("The debtor's lack of good faith in filing a bankruptcy petition has often

been used as cause for removing the automatic stay."); *United Enters. v. ACI Sunbow, LLC* (*In re ACI

Sunbow, LLC),* 206 B.R. 213, 217 (Bankr. S.D. Cal. 1997); *Little Creek Dev. Co. v. Commonwealth Mrtg.

Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071-72 (5th Cir. 1986); *In re Oklahoma P.A.C. First

Ltd. P'ship*, 122 B.R. 394, 402 (Bankr. D. Ariz. 1990) (the conclusion that a petition was filed in bad

faith "would serve as an independent basis to vacate the automatic stay under Section 362(d)(1)")

(citation omitted); *In re Yukon Enterps., Inc.,* 39 B.R. 919, 921 (Bankr. C.D. Cal. 1984) (granting relief

from stay for cause based on finding that case was not filed in good faith);

In *In re St. Paul Self Storage*, 185 B.R. at 580, the court set forth a list of factors indicating a

Chapter 11 petition was filed in bad faith. Those factors include (1) the debtor having only minimal

assets; (2) the debtor having no ongoing business to reorganize; (3) the absence of meaningful unsecured

creditors; (4) the debtor having no appreciable cash flow or sources of income to sustain a plan of

reorganization or to make adequate protection payments; and (5) the case essentially being a two-party

dispute capable of prompt adjudication in non-bankruptcy court. *Id.* at 582-83.

Here, Debtor's filing this case *the night before* a long-awaited hearing on Judgment Creditors' motion to add several non-debtor entities as judgment debtors demonstrates bad faith, *see* Remand Motion Bisconti Decl. Exh. 1 at 8, 16-17 – particularly on the heels of Debtor's history of misconduct as detailed in the Remand Motion. *Id.* at 8; *see In re Taipin*, 2013 WL 3936377, at *2 (Bankr. D. Haw. July 30, 2013) ("[i]n other words, [the debtors] filed their petition for the sole purpose of invoking the automatic stay and disrupting state court litigation."); *Bergmann*, 599 B.R. at 357 ("the automatic stay can be modified to allow parties to pursue litigation in other forums, especially where a matter is ready for trial").

Moreover, application of the *St. Paul Self Storage* factors demonstrates that Debtor's bankruptcy filing was in bad faith. For example, Debtor has no ongoing business to reorganize, and according to his filings in this proceeding Debtor's only major assets are two real properties in Los Angeles, which Debtor has scheduled as having an "unknown" value. Dkt. No. 42 at 11. Indeed, Debtor admits he attempted to transfer title for these two properties to a related entity for **no consideration**. *Id.* Moreover, as mentioned above, the undersecured portion of Judgment Creditors' judgment amount in the First Action totals over $35 million, making up approximately 99% of Debtor's unsecured debt. *See* Dkt. No. 53. This demonstrates this case is in essence a two-party dispute between Debtor, including his related entities, and Judgment Creditors. *See St. Paul Self Storage*, 185 B.R. at 583 (debtor's only significant asset was a claim against one creditor set to be tried in state court and bankruptcy court supervision of debtor's liquidation was not necessary to protect other creditors).

Charney's opposition to stay relief contradicts his own Schedules. He argues this is not "a single-asset" case due to the existence of the Real Property on the Schedules and the existence of "other assets." Opp. at 23. Yet his own Schedules disclose nothing beyond minimal assets: his statement in the Schedules that he would bring an action in Bankruptcy Court to get the Real Property "back" implicitly concedes that he does not have title to them *now*.  He transferred them out of his estate years ago in an attempt to conceal his assets from Judgment Creditors but fumbled the transfer so that the properties went to Apex Property Management, LLC – an independent third party—instead of the similarly-named alter ego, Apex RE, which Charney had intended.

The only other non-exempt asset of value in Charney's Schedules is the $23,446 in a checking account.[20] Charney's botched transfers of Real Property in an effort to evade Judgment Creditors' judgments, the sale of his vehicles immediately before his bankruptcy filing, and the calculated timing of his bankruptcy filing all reflect his bad faith and unwillingness to fulfill his obligations to Judgment Creditors.

Charney also claims that there are "numerous" unsecured creditors (Opp. at 23), but the Schedules tell a different story: Charney's Schedule F lists 24 creditors, totaling $239,000 (averaging less than $10,000 per creditor). Of this amount, $153,000 constitute alleged guarantee claims of an affiliate, Arya's Vintage Closet ("AVC"), *which filed bankruptcy one day before Charney (and was only created ten days prior to that date)*. Absent this alleged guarantee liability, incurred within ten days of the bankruptcy filing, debtor's unsecured debt would be held by 8 creditors, totaling $86,000.

Charney also claims he "has an ongoing business to reorganize" because AVC "anticipates receiving income." (Opp. at 23-24). However, Schedule I and J reflect that his liabilities exceed his income and that he may receive $10,000 a month from AVC starting in June, 2022. Sch. I, Q. 13. With *di minimus* assets, $52 million in liabilities and projected net income of $10,000 a month, there is nothing to reorganize.

The evidence of bad faith is insurmountable: a) LA Apparel was formed around the time Judgment Creditors were obtaining their first judgment against Charney, with its ownership placed in MFT, whose trustor and trustee are his parents and whose named beneficiary is his sister, while taking care to divert his income from LA Apparel to entities Charney wholly owned: Apex RE, ACMS, and Schmatta LA; b) once Judgment Creditors added Apex RE and ACMS as judgment debtors, Charney took care to divert his income to another wholly owned entity, Schmatta LA; c) when the State Court issued a tentative ruling on January 24, 2022, indicating that it would add LA Apparel, Schmatta LA and MFT as judgment debtors, Charney: 1) stopped taking income in Schmatta LA and became an "employee" of LA Apparel; 2) formed AVC on February 27, 2022; 3) filed Chapter 11 bankruptcy

---

[20] On April 15, 2022, at his meeting of creditors, Charney testified that those funds were the proceeds of the sale of two vehicles to an employee of LA Apparel and to LA Apparel directly on the day before and the day of the bankruptcy filing.

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

protection for AVC on March 9, 2022; and 4) sold two of his three vehicles on March 9 and 10, 2022 to an employee of LA Apparel and to LA Apparel directly.

The facts speak for themselves.

### D.  The Court Should Deny the Debtor's Request to Defer Determining Stay-Relief Until a U.S. Trustee Appoints a Committee of Unsecured Creditors

Debtor requests that the Court defer granting stay-relief in the hopes that U.S. Trustee will appoint a creditors committee. But as stated in the Judgment Creditors' replies in support of the Motions to Remand, the Office of the United States Trustee has been soliciting creditors to sit on an official creditors committee since March 23, 2022, and not one creditor (other than Judgment Creditors and *only* if there will be an official creditors committee without their participation) has agreed to be a member.  *See* Remand Motion Bisconti Decl., ¶ 3. The Debtor's only case authority for this request has nothing to do with bankruptcy or the automatic stay, but merely introduces the idea of a court's inherent authority to control its case docket.  *See generally Landis v. N. Am.Co.*, 299 U.S. 248, 254-55 (1936).

Without any evidence, authority, or any other support, the debtor baldly asserts that the Judgment Creditors are "not focused on maximizing recovery for the estate's creditors, but [are] instead focused on destroying the Debtor's reputation and all of his avenues and prospects for success and income building," and would be "happy to see [the debtor's entity] pillared, liquidated and left in rubble, if for no other reason than the satisfaction it will receive knowing that the Debtor will take a reputational hit as a result." These are baseless accusations that are not related to seeking stay-relief. Judgment Creditors have one interest only: putting an end to the Debtor's bad faith litigation tactics and delay, and being paid what they are owed.

### III.    CONCLUSION

In sum, if the Court grants Judgment Creditors' Remand Motions, the Court should also grant stay relief for the State Actions under 11 U.S.C. § 362(d)(1), to the extent necessary to permit these actions to proceed in the State Court.

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Dated: April 19, 2022                    BIENERT KATZMAN LITTRELL WILLIAMS LLP

                                         By:    /s/ Anthony R. Bisconti
                                                Steven J. Katzman
                                                Anthony R. Bisconti

Dated: April 19, 2022                    WILK AUSLANDER LLP

                                                Jay Auslander
                                                Eric Snyder

                                         *Attorneys for Standard General L.P., Standard
                                         General Master Fund, L.P., and P Standard
                                         General Ltd.*

REPLY IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

601 W. 5th Street, Suite 720
Los Angeles, California 90071

A true and correct copy of the foregoing document entitled (*specify*):
   **1) REPLY IN SUPPORT OF THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM); and**
   **2) STANDARD GENERAL L.P., STANDARD GENERAL MASTER FUND, L.P., AND P STANDARD GENERAL LTD.'S REQUEST FOR JUDICIAL NOTICE IN FURTHER SUPPORT OF THEIR MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (ACTION IN NONBANKRUPTCY FORUM)**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 19, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) April 19, 2022, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Judge Vincent P. Zurzolo
United States Bankruptcy Court
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 19, 2022 | Elizabeth Garcia | /s/ Elizabeth Garcia |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

### TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)

**Anthony Bisconti** tbisconti@bklwlaw.com, 4579179420@filings.docketbird.com;docket@bklwlaw.com
**Todd S Garan** e ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
**Robert P Go**e kmurphy@goeforlaw.com, rgoe@goeforlaw.com;goeforecf@gmail.com
**Christopher J Harney** charney@tocounsel.com, stena@tocounsel.com
**Steven J. Katzman** SKatzman@bienertkatzman.com, 4579179420@filings.docketbird.com;
docket@bklwlaw.com
**William N Lobel** wlobel@tocounsel.com, stena@tocounsel.com;sschuster@tocounsel.com
**Kelly L Morrison** kelly.l.morrison@usdoj.gov
**Olaf J Muller** olaf@olafmullerlaw.com
**Jeffrey M. Reisner** jreisner@steptoe.com, #-FirmPSDocketing@Steptoe.com;
klyman@steptoe.com;nmorneault@Steptoe.com
**Richard L. Stevenson** bknotice@mccarthyholthus.com
**Jessica Taran** jtaran@jtaranlaw.com
**United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov
**Jennifer C Wong** bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**